IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2020 JAN 21  A 11: 07
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| SAMANTHA CHILDRESS-HYCHE, ) | |
| ) | COLLECTIVE ACTION |
| Plaintiff, ) | |
| ) | Civil Action No.: |
| v. ) | 2:20-CV-53-ECM-JTA |
| ) | |
| ) | |
| CAS CAPITAL GROUP, LLC d/b/a ) | |
| SONIC DRIVE-IN RESTAURANTS, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

### I.  INTRODUCTION

Plaintiff Samantha Childress-Hyche brings this action pursuant to the Act of Congress known as 42 U.S.C. §1981, as amended, and on her behalf and those similarly situated pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. " 201 *et seq*. Plaintiff alleges in violation of the law, Defendant discriminated against her as to the terms and conditions of her employment and termination, wholly or partially based on her race. Plaintiff also alleges Defendant failed to pay her all minimum wages prescribed by federal law. Plaintiff is entitled to equitable relief, compensatory damages, liquidated damages, punitive damages, attorney fees, and costs.

1

## II. JURISDICTION

1. This Court has jurisdiction in accordance with 28 U.S.C. §§ 1331, 1343(a), 2201- 2202. The venue is proper pursuant to 28 U.S.C. § 1391.

2. The plaintiff has timely filed this race discrimination suit within four (4) years of the discriminatory treatment.

3. The plaintiff has timely filed this claim for minimum wages within two years of the violation and within three years of the violation if willfulness is shown.

## III. PARTIES

4. Plaintiff, Samantha Childress-Hyche is a female citizen of the United States and a resident of the State of Alabama. Plaintiff was Defendant's employee as that term is defined under the § 1981 and the FLSA.

5. The defendant CAS Capital Group, LLC (hereinafter "CCG") was Plaintiff's 'employer' under § 1981 and the FLSA.

## IV. STATEMENT OF FACTS

6. Plaintiff is a Caucasian female.

7. Plaintiff's general manager was Walter Blarie, and he is an African-American male.

8. Plaintiff's assistant general manager was Charlene Ware, and she is a

2

Caucasian female

9. Walter Blarie and Charlene Ware were romantically involved.

10. Including her last stint of employment, Plaintiff has worked at Defendant's location on four different occasions for a combined total of approximately 12 months.

11. Plaintiff had no problems with management during any of her prior stints of employment, which occurred before the hiring of Walter Blarie.

12. Plaintiff worked multiple positions including as a Carhop, *i.e.*, car-side server or waitress, and Plaintiff was paid $4.25 per hour, plus tips.

13. Defendant uses this compensation plan for all employees working as Carhops at Plaintiff's location and its other Sonic locations.

14. Defendant's customers, however, rarely leave Carhops tips.

15. From customers' credit card receipts, Defendant is aware its Carhops rarely receive tips.

16. The combination of Plaintiff's cash hourly rate plus tips did not amount to compensation equal to $7.25 per hour for her work.

17. The combination of Plaintiff's co-worker Carhop's cash hourly rate plus tips did not amount to compensation equal to $7.25 per hour for their work.

18. Walter Blarie, and Charlene Ware as his proxy, favored Plaintiff's African-American co-workers by assigning them more hours of work than

3

Caucasians and easier jobs.

19. Walter Blarie and Charlene Ware promoted or changed the titles of three of the five African-Americans employed at the time as to increase their rates of pay for comparable work performed by Caucasian employees, and they did not do the same for any of the ten to twelve Caucasians employed, including Plaintiff.

20. The plaintiff had more experience and was better qualified than the African-Americans promoted; Walter Blarie and Charlene Ware did not offer her a promotion, and the Defendant paid her less than those individuals for comparable work.

21. Walter Blarie and Charlene Ware were more lenient with African-Americans concerning granting time off and discipline for violations of Defendant attendance and tardy policies.

22. Approximately two weeks after her start, on April 25, 2018, Plaintiff left the premises while on her approved break. During her break, Plaintiff learned her grandfather was going to die soon and that the family needed to see him immediately or risk not seeing him before he passed.

23. Upon Plaintiff's return from break, she went to the assistant manager, Katie Powell, and told her of her grandfather's condition.

24. Katie Powell then called the assistant general manager, Charlene Ware.

25. Charlene Ware and Walter Blarie conferred about replacing Plaintiff.

26. Plaintiff went outside to, among other things, wait to learn whether she could leave to see her grandfather.

27. When Katie Powell did not return, Plaintiff went to sit in her car to wait.

28. Thereafter, Katie Powell came out to Plaintiff's car and told her Charlene Ware wanted her terminated, and she no longer had a job.

## V. CAUSES OF ACTION

### A. THE FAIR LABOR STANDARDS ACT OF 1938 – MINIMUM WAGE VIOLATIONS (BROUGHT AGAINST DEFENDANT BY THE INDIVIDUALLY NAMED PLAINTIFF AND ON BEHALF OF ALL SIMILARLY SITUATED)

29. Plaintiff realleges and incorporates by reference Paragraphs 4-5 and 11-17 above with the same force and effect as if fully set out in specific detail below.

30. Plaintiff brings Count I, for unpaid minimum wages, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b). In addition to the claims of the individually named plaintiff, Plaintiff Hyche brings this action as a representative of all similarly situated former and current employees of the Defendant. The potential class of "opt-in" employees is defined as:

> All current and former [hourly] servers employed by Defendant at its Sonic locations and paid a per hour rate less than $7.25 per hour for all hours worked.

31. FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

32. Plaintiff, individually and on behalf of other similarly situated

5

employees, seeks relief on a collective basis challenging Defendant's practice of failing to pay servers for all hours worked at applicable and required minimum wage rates.

33. The number and identity of other plaintiffs yet to opt-in and consent to be a party may be determined from the records of the Defendant, and potential class members may easily and quickly be notified of the pendency of this action.

34. Potential collective action members may be informed of the pendency of this class action through direct mail and email.

35. There are questions of fact and the law common to the class that predominates over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

    a) How many hours Plaintiff and the putative class worked;

    b) Whether Plaintiff and members of the putative class were compensated under a plan comprised of hourly cash wages less than $7.25 per hour plus tips;

    c) Whether Plaintiff and members of the putative class received a regular rate of pay less than $7.25 per hour; and,

    d) Whether Defendant willfully failed to pay Plaintiff and the putative class all minimum wages required under the law.

36. The questions set forth above predominate over any questions affecting only individual persons, and a collective action is superior with respect to

considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of the federal law claims.

37. The collective action representative's claims are typical of those similarly situated employees in that these employees have been employed in the same or similar positions as the representative and were subject to the same or similar unlawful practices as the representative.

38. A collective action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the similarly situated current and former employees. The presentation of separate actions by individual similarly situated current or former employees could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and or substantially impair or impede the ability of Collective Action members to protect their interests.

39. Plaintiff is an adequate representative of similarly situated current and former employees because she was an employee of the same entity, and her interests do not conflict with the interests of the other similarly situated current and former employees she seeks to represent. The interests of the members of the class of employees will be fairly and adequately protected by Plaintiff and her undersigned counsel, which has extensive experience prosecuting complex class and collective action lawsuits.

40. At all material times herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq*.

41. Plaintiff and all similarly situated employees are victims of a uniform and companywide compensation policy and practice that violates the FLSA.

42. Defendant violated the FLSA by failing to ensure Plaintiff's and putative class members' cash wages plus tips equaled an effective hourly rate of $7.25 per hour.

43. The FLSA regulates, among other things, the payment of wages, including minimum wages by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or the production of goods for commerce. 29 U.S.C. § 207(a)(1).

44. Defendant was and is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce, and its employees are engaged in commerce.

45. Defendant's failure to accurately pay minimum wages was willfully perpetrated. Defendant has not acted in good faith, nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime

premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

46. Alternatively, should the Court find Defendant did not act willfully in failing to pay all minimum hourly due, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

47. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, Plaintiff and all similarly situated employees are entitled to damages equal to the mandated unpaid minimum wages within the three years preceding the filing of this Complaint or their consent to join, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether the FLSA prohibited its conduct.

48. According to the FLSA, 29 U.S.C. § 216(b), a successful Plaintiff is also entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for legally prescribed unpaid wages.

    **B.   RACE-BASED DISCRIMINATION IN VIOLATION OF SECTION 1981**

49. Plaintiff realleges and incorporates by reference Paragraphs 4-11 and 18-28 above with the same force and effect as if fully set out in specific detail below.

50. Plaintiff brings her race-based discrimination claim pursuant to 42 U.S.C. § 1981.

51. Walter Blarie and Charlene Ware were in a romantic relationship, and

both favored African-Americans over Caucasians, or in the alternative, Charlene Ware as Walter Blarie's proxy favored African-Americans as a result of their relationship.

52. Either or both Walter Blarie and Charlene Ware decided to terminate Plaintiff's employment.

53. Plaintiff is a Caucasian, and the relevant decision-maker ending Plaintiff's employment, as well as the decision-maker's proxy, was aware of Plaintiff's race and the decision-maker's bias favoring African-Americans.

54. After just a couple weeks of employment, after a request by Plaintiff to leave her shift to see her dying grandfather, Walter Blarie and Charlene Ware ended her employment even though they allowed Plaintiff's African-American co-workers to leave their shifts early upon request.

55. Plaintiff's race was a motivating factor when the decision-makers determined they should terminate Plaintiff.

56. Plaintiff was not provided any specific reason for her termination.

57. Plaintiff's position and or responsibilities, in whole or part, were taken on by an African-American employee after her employment ended.

58. Plaintiff's termination, the promotion of African-Americans instead of Plaintiff, African-Americans' higher pay for comparable work, and the assignment of greater hours of work to African-Americans constitute adverse employment

actions.

59. As a result of this adverse employment action, the plaintiff has suffered lost wages, advancement opportunities, and benefits.

## VI. **RELIEF**

**WHEREFORE**, it is respectfully prayed that this Court grant to Plaintiff the following relief:

a. Issue a declaratory judgment that Defendant's actions, as described in the Complaint, are unlawful and willful, in violation of 42 U.S.C. § 1981;

b. Issue an Order directing and requiring Defendant to pay Plaintiff damages compensatory damages, punitive damages, lost minimum wages, liquidated damages, and pre-judgment interest where and if applicable;

c. Issue an Order directing and requiring Defendant reinstate Plaintiff, or award Plaintiff front pay if no position is available or reinstatement is not appropriate; and,

d. Issue an Order directing awarding Plaintiff reasonable attorneys' fees and costs expended in the course of litigating this action.

e. Provide Plaintiff with such other and further relief, as the Court deems just and equitable.

Respectfully submitted,

/s/ Robert J. Camp
Robert J. Camp
**Counsel for Plaintiff**

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

/s/ Robert J. Camp
**OF COUNSEL**

Plaintiff requests this Honorable Court to serve via certified mail upon the Defendant the following: Summons, Complaint.

**Defendant's Address:**
**Registered Agent, Inc.**
**c/o CAS Capital Group, LLC**
**212 West Troy Street, Suite B**
**Dothan, Alabama 36303**

/s/ Robert J. Camp
**OF COUNSEL**